[Crim. No. 1296. Second Appellate District, Division Two.—March 20, 1926.]

THE PEOPLE, Respondent, v. ALLEN ALEXANDER, Appellant.

[1] CRIMINAL LAW—ISSUANCE OF FICTITIOUS CHECKS—OTHER CHECKS —SAME TRANSACTION—EVIDENCE.—In this prosecution in which defendant was charged with having issued and delivered two checks without having money, funds, or credit at the bank with which to meet them, it having been shown that the checks in question were given to two persons in connection with the purchase from each of said persons of an automobile, two post-dated checks drawn by defendant on banks in which he had no money, funds, or credit and which were given by defendant to said persons as component parts of the same automobile transactions

were properly admitted in evidence, in accordance with the provisions of sections 1850 and 1854 of the Code of Civil Procedure, as declarations and writings embraced within the same transaction, and as tending to throw light on the question before the court and jury.

[2] Id.—Agreement to Pay—Subsequent Conversations—Evidence. In such prosecution, the court did not err in striking out the testimony, brought out on the cross-examination of one of the complaining witnesses, that defendant telephoned her to hold the check given her and stated that he would pay her in cash, to which she replied in the affirmative, where, prior to the striking out of such testimony, it developed that such conversation occurred on the day following the issuance of the spurious paper, after defendant had pledged the car of said complaining witness elsewhere upon other false representations and thus been enabled to raise the funds to pay said check, and after the complaining witness had discovered that the check was worthless and had called the officers.

[3] Id.—Cross-examination—Limitation Without Error.—In such prosecution, the trial court did not commit reversible error in sustaining the prosecution's objection to a question, asked of said complaining witness on cross-examination, regarding an alleged conversation between herself and defendant on the next day after the check was drawn, where she had not testified on direct examination as to such conversation, and defendant later cross-examined her upon the subject.

[4] Id. — Impeachment of Complaining Witness — Cross-examination of Son—Foundation.—In such prosecution, the trial court did not err in not permitting the son of said complaining witness to answer certain questions as to what his mother had said to him concerning a telephone conversation with defendant, which questions were asked for the purpose of impeaching the complaining witness, but she had not testified that she had not so stated and no foundation was laid for such impeaching testimony.

[5] Id.—Mistaken Testimony—Argument With Witness—Restriction of Examination.—In such prosecution, where the son of said complaining witness, on cross-examination, had given conflicting answers as to the time his mother presented for payment the two checks given to her and, on further examination, admitted that he was mistaken in his former answer, whereupon counsel for defendant proceeded to ask a further question on that subject which in effect amounted to an argument with the witness, the trial court did not err in saying, "I would not argue that. It is apparent he is mistaken. You don't need to take time further."

4.   See 27 Cal. Jur. 161.

[6] ID.—PLEADING—EVIDENCE—VERDICT.—In such prosecution, where the information charged that defendant gave the complaining witness a fictitious check for a specified sum, without having money, funds, or credit at the bank with which to meet it, and the evidence showed that at the same time defendant gave the complaining witness another and larger check, which the latter was asked to hold, but defendant was not charged with having given said larger check, and there was abundant evidence tending to show that defendant issued and delivered the smaller check as alleged, and that he had no money in the bank at the time to meet it, this constituted ample ground upon which to base the verdict and judgment of conviction.

(1) 25 C. J., p. 644, n. 3, p. 649, n. 31.    (2) 25 C. J., p. 645, n. 4. (3) 40 Cyc., p. 2506, n. 10, p. 2507, n. 13.    (4) 40 Cyc., p. 2701, n. 40, p. 2703, n. 42, p. 2719, n. 18.    (5) 16 C. J., p. 829, n. 34; 17 C. J., p. 295, n. 63, 64.    (6) 25 C. J., p. 650, n. 42.

APPEAL from a judgment of the Superior Court of Los Angeles County. Edwin F. Hahn, Judge. Affirmed.

The facts are stated in the opinion of the court.

John A. Hollard and Jos. R. Marquette, Jr., for Appellant.

U. S. Webb, Attorney-General, and Erwin W. Widney, Deputy Attorney-General, for Respondent.

CRAIG, J.—Appellant was charged by information and convicted of having issued and delivered to one Frank Prott a check for the sum of $100, and to a Mrs. Ada I. Bailey a check for $212.50, without having money, funds, or credit at the bank with which to meet them. A motion for new trial was presented, and overruled, and this is an appeal from the ruling upon such motion, and from the judgment.

It appeared from the testimony of the prosecuting witnesses that each of them had advertised an automobile for sale, and that appellant negotiated for the purchase, and obtained possession, of both machines, in each instance displaying a pass-book of the First National Bank of Long Beach, where he claimed to have an account. An officer of the bank was sworn and testified that appellant had some months previously opened an account with said bank, but that he withdrew all but fifty cents on the next day, and

that he made no further deposits, and had no account with the bank at the time of giving the checks in question.

Prott testified that the transaction occurred on a Saturday afternoon, and that he hesitated about accepting a check, but that appellant assured him that he was a member of the Automobile Club of Southern California, and at the same time signed and delivered to Prott a check for $500 on the California Bank, which was post dated. Mrs. Bailey and her son each testified that appellant told them that he was a member of said club, and exhibited one of its membership cards. He also gave her a post-dated check for $500, drawn on the Long Beach bank. On one check which he gave to Prott appellant wrote his address as the Torrey Pine Apartments and on the $500 check to Mrs. Bailey he gave his residence as 1106 Thirty-seventh Place, Los Angeles. An officer of the California Bank testified that appellant had no account with that institution. An attorney for the Automobile Club swore that appellant had ceased to be a member of the club some six months previously to giving the checks, and a police officer testified upon investigation he found that appellant did not reside at either of the addresses which he gave. Each of the prosecuting witnesses detailed the circumstances of their respective sales, and the checks were introduced in evidence. An officer also stated that the defendant admitted when arrested that the check for $212.50 was not good, but asserted that he had the money with which to take it up. It appeared that appellant borrowed about $320 from a loan company on the Bailey car, for which he had paid with the worthless checks, and this he admitted upon the trial, but denied that he had shown a bank-book or membership card of the Automobile Club, or that he had claimed to be a member thereof.

[1] It is first contended that the trial court erred in permitting the evidence as to post-dated checks to be introduced, and in receiving the checks themselves in evidence. However, it clearly appears that the respective $500 checks were component parts of the transactions in which they were given, and that they were offered for the purpose of showing intent. Such evidence was properly admitted in accordance with the provisions of sections 1850 and 1854 of the Code of Civil Procedure, as declarations and writings

embraced within the same transaction, and as tending to throw light on the question before the court and jury.

[2] In cross-examining one of the complaining witnesses, Mrs. Bailey, appellant's counsel asked if the defendant did not in fact telephone her to hold the check for $212.50 and state that he would pay her in cash, to which she replied in the affirmative. It developed, however, that such conversation occurred on the day following the issuance of the spurious paper, after the defendant had procured a loan on Mrs. Bailey's car, and after she had discovered that the check was worthless and had called the officers. The testimony was therefore stricken out on motion of the district attorney, and appellant assigns this ruling as prejudicial error. It is urged in his brief that a case could be imagined where one who had issued a worthless check and fled might telephone back, "Hold the check. It is not good. I will bring you the money." It is asserted that while under such conditions the ruling would be proper, appellant should have been allowed to show an honest intent to pay the amount of the check; that he actually had the money, and that when he appeared at the Bailey residence he was arrested. We are unable to substantially distinguish the cases. Having obtained possession of an automobile on the strength of two fraudulent checks and upon false representations, and having pledged the car elsewhere upon other false representations, and thus being enabled to raise funds with which to cover up the previous crime, the offer to use such funds so obtained for that purpose is no evidence of honest intentions at the time appellant issued the check in question. The ruling of the trial court was proper.

[3] The next point urged for reversal is that the defendant was precluded from cross-examining Mrs. Bailey regarding an alleged conversation between herself and the defendant on the next day after the check was given. There was some colloquy between the court and counsel as to whether or not the witness had testified upon direct examination as to such conversation, wherein it developed that she had not, and objections to the defendant's questions were thereupon sustained. However, he later cross-examined her upon the subject, and it then appeared that the only conversation on that day consisted of a telephone message that Alexander was going to Long Beach for some money, that he would

accompany his wife to a doctor's office, and that he would see the witness in the afternoon and pay her the $212.50, to which she replied, "All right." Appellant testified in his own behalf that when he gave the check to Mrs. Bailey he asked her to hold it, but this she unqualifiedly denied. The result was that appellant was not limited in his cross-examination of the witness, and the only question presented was one of fact for the jury, upon conflicting testimony, as to the sincerity of his intentions. We see no error in the ruling below.

[4] It is insisted that the court also committed prejudicial error in sustaining objections of the district attorney to appellant's cross-examination of Mrs. Bailey's son, when he was asked: "When you returned at 9:30 on that morning, did your mother tell you he had telephoned?" "What did she say relative to that?" and "Had your mother told you that he was coming out to the house with the money that afternoon?" The witness replied that his mother did inform him of the telephone call, but was not permitted to answer the questions following such answer, and it is urged that the purpose of them was to impeach her testimony. But she did not testify that she had not so stated; no inconsisent or contradictory statements of Mrs. Bailey are cited, nor was any foundation laid for such impeaching evidence. The objections were therefore properly sustained. (*People* v. *Rousse,* 26 Cal. App. 100 [146 Pac. 65].)

[5] Again, appellant contends that the cross-examination of L. R. Bailey, the son, was erroneously and prejudicially limited, and that the trial court usurped the functions of the jury. The witness at first stated that his mother presented the $212.50 check and the $500 check at the bank on the same day, but not at the same time, but later corrected himself when asked, "What do you mean by 'the same day'?" He answered, "Perhaps she did present both checks at that time." Asked which was right, he replied, "She presented them both." "Q. Then you were mistaken a moment ago? A. I was. Q. When you were so positive? A. I am." The court then interposed, saying, "I would not argue that. It is apparent he is mistaken. You don't need to take time further."

Counsel did not object nor assign the remarks of the court as prejudicial, but had he done so, it is a familiar rule that

counsel are not permitted to argue with a witness, and the only other statement of the court to which exception is taken consisted of a repetition of the witness' own admission that he was mistaken. This was also doubtless apparent to the jury from other evidence in the case, and we do not coincide with appellant's assertion that a "glaring discrepancy was glossed off as an apparent mistake" of a "lying witness." If constrained to hold that the remarks of the court added weight to the statement of the witness in this trivial respect, the jury were instructed to disregard the remarks of both counsel and the court, and we must assume that such instruction was observed.

[6] Appellant's only remaining point consists of the assertion that he was charged "with having given to one Frank J. Prott a check for $600 in payment for a second-hand car." And it is urged that there is no evidence to support a conviction upon count II of the information, involving such charge. It appears upon the face of the record that he was charged with having given Prott a check for $100, and the evidence shows that he gave one for $500 at the same time, which he asked Prott to hold. We have heretofore briefly set forth a summary of the facts, gathered from a careful perusal of the evidence. Appellant was not charged with having given a $600 check, nor do we find any mention of such a document. There was an abundance of evidence tending to show that the defendant issued and delivered the check for $100 as alleged, and that he had no money in the bank at the time to meet it. This constituted ample ground upon which to base the verdict and judgment, and is supported by other evidence of the defendant's false representations and manipulations in the realms of "high finance," from all of which we think the jury wholly justified in convicting him.

The judgment and order denying the motion for new trial are affirmed.

Finlayson, P. J., and Works, J., concurred.