223 P.2d 520]

## Appellate Department, Superior Court, Los Angeles

[Civ. A. No. 7439.   Oct. 24, 1950.]

H. P. FURSDON et al., Respondents, v. COUNTY OF LOS ANGELES, Appellant.

Harold W. Kennedy, County Counsel, and Milnor E. Gleaves, Deputy County Counsel, for Appellant.

Francis C. Jones and Theodore R. Coomber for Respondents.

SHAW, P. J.—This is an appeal by defendant from a judgment for plaintiffs. ▮ There are no express findings, and we have no record of the evidence, the appeal being presented on the judgment roll. We must, therefore, regard all allegations of plaintiffs' complaint as true. If there were' allegations of defensive facts in the answer, we would regard them as untrue, but we find none. The so-called "further" defenses of the answer are nothing more than legal conclusions, on which no issues of fact arise.

The case was tried upon the first amended complaint, from which it appears that plaintiffs were at the time in question duly qualified phonographic reporters of the Los Angeles Municipal Court, that a judge of that court was engaged in holding a preliminary examination of a felony charge, that on August 11, 1949, such judge made in that proceeding an order (which is dated August 9, 1949) "that a daily transcript consisting of an original and six copies be prepared in this action," that plaintiffs "are ordered to report said proceedings," and that the fee for such transcript and copies "shall be paid. from the County Treasury." In compliance with this order plaintiffs made a transcript of the previous proceedings and of proceedings from August 9, 1949 to August 16, 1949; and on August 16, 1949, the proceeding was dismissed against all defendants. Thereafter plaintiffs presented

their claim for the transcript, in the sum of $2,493.90, but the defendant refuses to pay it. The trial court gave judgment for plaintiffs for the full amount of the claim. No question is presented here as to the amount. We are reversing this judgment because of our conclusion that the order for the transcript was unauthorized and void.

■ We begin the consideration of the case with this rule stated in *Hart Bros. Co.* v. *County of Los Angeles* (1938), 31 Cal.App.2d Supp. 766, 768 [82 P.2d 221]: ". . . that 'one who demands payment of a claim against a county must show some statute authorizing it, or that it arises from some contract, express or implied, which itself finds authority of law. It is not sufficient that the services performed, for which payment is claimed, were beneficial.' (*Irwin* v. *County of Yuba* (1898), 119 Cal. 686, 690 [52 P. 35])."

■ The principal authority to which plaintiffs point in support of the claim is section 29602 of the Government Code (placed in this code in 1947; formerly Pol. Code, § 4307, subd. 3). It reads as follows: "The expenses necessarily incurred in the support of persons charged with or convicted of crime and committed to the county jail, and for other services in relation to criminal proceedings for which no specific compensation is prescribed by law are county charges."

This provision does not throw open the door to the unsolicited performance of any sort of services by anybody and sanction payment of their cost by the county whenever they are "in relation to criminal proceedings." One condition to such payment is that the expense of such services be "necessarily incurred." This means that the services have been ordered by some officer or board then having authority to do so. (*Hart Bros. Co.* v. *County of Los Angeles* (1938), 31 Cal. App.2d Supp. 766, 770 [82 P.2d 221]; *Los Angeles Warehouse Co.* v. *County of Los Angeles* (1934), 139 Cal.App. 368, 371 [33 P.2d 1058]). Plaintiffs argue that a different construction was given this statutory provision in *Gibson* v. *County of Sacramento* (1918), 37 Cal.App. 523 [174 P. 935], but we do not so regard that case. Some of the language of the opinion might possibly have such a tendency, if considered without regard to the facts of the case; but there an express statutory authority to order the services appeared, and the only question under consideration was whether there was a liability on the county to pay for them. This, the court concluded, was created by the provision in question, then in the Political Code.

■ Our inquiry, then, is whether the judge of the municipal court who was holding the preliminary examination had authority to order the rendition of the services here in question. The holding of such an examination is provided for in the Penal Code, with some detail as to the procedure and the powers of the official presiding. (§§ 858-883.) Such preliminary examination follows the filing of a complaint and is to be conducted by "a magistrate of the court in which such complaint is on file" (§ 859; see, also, §§ 859a, 860), not by the court. Such magistrate is authorized to appoint a shorthand reporter to take down the proceedings, and "if the defendant be held to answer the charge" such reporter shall make and file an original transcript and one copy for each defendant, and shall be paid therefor the compensation that would be allowed superior court reporters. (§ 869.) This section authorizes the making of a transcript and payment therefor *only* if a defendant is held to answer (*Mattingly* v. *Nichols* (1901), 133 Cal. 332 [65 P. 748]). It does not avail the plaintiffs here where the charge was dismissed.

Plaintiffs contend, however, that the magistrate had implied or inherent power to make the order, if a daily transcript was needed for the convenient progress of the proceeding, and that the complaint shows facts which would bring this inherent power into operation, it being alleged that the criminal complaint contained fifty-seven counts against five persons, that the evidence could not be arranged in sequence against any defendant, and that neither court nor counsel could remember what evidence had been presented against any particular defendant. In support of the argument for implied powers, plaintiffs cite the decision of this court in *Hart Bros. Co.* v. *County of Los Angeles, supra,* 31 Cal.App.2d Supp. 766, where it was held that a *municipal court* had inherent or implied power to provide necessary meals, lodging and transportation for a jury in a criminal case while they were kept together in custody of an officer after their retirement for deliberation. There, it is to be noted, we were dealing with a municipal court sitting as such in the trial of a case, not with one of its judges sitting as a magistrate, and were proceeding on the assumption that there was no statutory provision affecting the matter.

Other decisions, however, have dealt with the matter of the implied powers of a magistrate. The term "magistrate," when used in the Penal Code, includes justices of the Supreme Court and of the District Courts of Appeal, judges of the

superior court and of the municipal courts, police magistrates in cities and towns, and judges of city courts. (Pen. Code, §§ 7 (subd. 9), 807, 808.) Commenting on this list in *People* v. *Cohen* (1897); 118 Cal. 74, 78 [50 P. 20], where it was held that a judge of the superior court, when sitting as a magistrate, could not have an oath administered by the clerk of the superior court, and hence one so sworn could not be convicted of perjury, the Supreme Court said: "A superior judge, when sitting as a magistrate, possesses no other or greater powers than are possessed by any other officer exercising the functions of a magistrate. The justices of this court, judges of the superior courts, justices of the peace and police magistrates in cities and towns are each and all by the statute made magistrates. (Pen. Code, sec. 808.) The office is purely a statutory one, and the powers and duties of the functionary are solely those given by the statute; and those powers are precisely the same whether exercised by virtue of one office, or that of another. The statute makes no sort of distinction between them. If a judge of a superior court, or a justice of this court, sees fit to assume the duties of a committing magistrate—duties which are usually performed by others—he has no greater authority as such magistrate than that possessed by any justice of the peace or police judge. (*People* v. *Crespi*, 115 Cal. 50 [46 P. 863].) *He is not accompanied in the discharge of those functions by any of the general or implied powers, nor by those presumptions of regularity of his proceedings, which surround him when sitting as a judge of a court of record.* As such magistrate he is purely a creature of the statute." (Emphasis ours.) In *People* v. *Crespi* (1896), 115 Cal. 50, 54 [46 P. 863], the Supreme Court held that the crimes for which a magistrate could hold a preliminary examination were not limited by the limitations on the trial jurisdiction of the court of which he was a judge, saying: "Justices of the supreme court, judges of the superior court, justices of the peace and police judges, when sitting as magistrates, have the jurisdiction and powers conferred by law upon magistrates, and not those which pertain to their respective judicial offices." In *In re Sing* (1910), 13 Cal.App. 736, 740 [110 P. 693], the court said, by way of dictum: "A superior judge assuming the duties of a magistrate has no right to call in the clerk or any other officer to administer oaths. He sits as a creature of the statute, with such powers only as are conferred upon justices of the peace and police judges." In *County of Tulare* v. *Fenn* (1920), 47 Cal.App. 413, 415

[190 P. 855], it was held that bail money deposited with the defendant, the city recorder of the city of Lindsay, by one held for examination on a felony charge, and forfeited by reason of his failure to appear, belonged to the county and not to the city of Lindsay, which claimed it as a forfeiture "collected in any police court," under a statute awarding such forfeitures to the city. The court said:

"The money in question here was not payable to the city treasurer of the city of Lindsay, unless as a forfeiture it was collected in the recorder's court in its character as a police court and in connection with an action prosecuted therein. But it was not so collected. . . .

"Since the charge on which Ah Wong was held under arrest was not for a misdemeanor triable in the recorder's court, but was a charge of felony, the defendant Fenn could not act in that matter except as a magistrate. The power of justices of the peace and police judges to hold examinations and commit persons to be held on charges of felony or misdemeanor triable in the superior court is derived from the character of those officers as magistrates, and not as justices of the peace or judges of police courts. This office of magistrate is purely a statutory one, 'and the powers and duties of the functionary are solely those given by statute.' (*People* v. *Cohen*, 118 Cal. 74, 78 [50 P. 20] ; *People* v. *Crespi*, 115 Cal. 50 [46 P. 863].) Even a justice of the supreme court, or a judge of the superior court, if he sees fit to assume the duties of a committing magistrate, 'is not accompanied in the discharge of those functions by any of the general or implied powers . . . which surround him when sitting as a court of record.' (*People* v. *Cohen, supra.*)"

From these cases we conclude that, whatever may be the inherent powers of the court from which a magistrate comes to conduct a preliminary examination, those powers do not inhere in him while he is acting as such magistrate. Indeed, this conclusion is at least implied in the opinion in *Mattingly* v. *Nichols, supra*, (1901) 133 Cal. 332, 334-5, where the record on appeal shows that the order for the transcript was made before the discharge of the defendant, and so might have been made for the same reasons as those alleged to have prompted the order here, though no such argument was made in the briefs, but the court said: "It is not material to inquire whether the transcribed notes could or would have been of any use ; the question, as finally stated in the reply brief, is, whether appellant is entitled to pay, having performed the service

upon the demand of the accused and under the order of the examining magistrate. But neither the state nor the county can be charged with a liability, unless it is authorized by law. No discretion is vested in the justice of the peace in the matter. His authority must be found in the statute, if he has it, and we do not find any.''

Plaintiffs also refer to the provisions of the Code of Civil Procedure for official reporters of the municipal courts. Although plaintiffs do not directly allege that they were such reporters—the word ''official'' not appearing in their allegation—we assume that such is the intended meaning of the allegation, and so regard it. Section 274c of the Code of Civil Procedure provides for the appointment of ''official reporters'' by municipal courts, who ''must . . . on the order of the court in a criminal action or proceeding, take down in shorthand all the testimony'' etc., and ''if directed by the court'' must make a transcript thereof. By this section, sections 270-274 are made applicable to the fees of official reporters of the municipal courts. Section 274, which is by its own terms applicable to official reporters of the superior courts, provides that ''in criminal cases in which the court specifically so directs the fee . . . for a transcript ordered by the court to be made must be paid out of the county treasury on the order of the court, except that when a daily transcript is ordered as provided in section 269 of this code then said section shall be applicable.'' The significance of this reference to section 269 escapes us, for on reading that section we see in it no mention whatever of a daily transcript. But we forbear to inquire into this mystery, for we are satisfied that none of these sections is applicable to the present case. Their impact is upon actions and proceedings pending in the *courts* referred to. As the authorities previously cited show, a preliminary examination of a felony charge is not such a proceeding, and the magistrate conducting it, even though he be a judge of such a court, does not, as such magistrate, have the powers of or act for the court. A somewhat similar question was decided in *People* v. *Williams* (1933), 129 Cal.App. 504, 508, 509 [19 P.2d 37]. There it was contended that an order holding a defendant to answer on a felony charge was invalid because the justice of the peace who, as a magistrate, conducted the examination appointed a shorthand reporter, under section 869, Penal Code, who was not one of the official reporters appointed under section 274c, Code of Civil Procedure, for the justice's court from which the magistrate came. In

holding the order valid, the court said: "A justice of the peace who conducts a preliminary examination of a defendant charged with the commission of a public offense does so in his capacity as magistrate. (*County of Tulare* v. *Fenn,* 47 Cal.App. 413, 415 [190 P. 855]). . . . since the power of a justice of the peace to hold preliminary examinations and to commit persons to be held for trial in the superior court is derived from the character of the officer as a magistrate and not from his character as justice of the peace (*County of Tulare* v. *Fenn, supra*), it follows that those sections of the Penal Code which are specifically applicable to the conduct of preliminary examinations by magistrates must govern rather than those sections of the Code of Civil Procedure which have for their object the establishment of the competency of reporters in justices' courts."

The judgment is reversed.

Bishop, J., and Stephens, J., concurred.